Robert Skousen, Pro Se
6017 Pine Ridge Rd., Suite 349
Naples, FL 34119

Telephone: (310) 480-9882
Email: rjs@skousenlaw.com

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT, FT. MEYERS DIVISION

Case No.: 2:26-CV-3-KCD-NPM

ROBERT SKOUSEN, an individual,

Plaintiff,

vs.

JAMES K. SKOUSEN, an individual, and DOES 1-100,

Defendants.

COMPLAINT FOR:

1. VIOLATION OF THE FEDERAL COMPUTER FRAUD ABUSE ACT [18 U.S.C. § 1030];
2. VIOLATION OF FLORIDA STATUTE § 772.11; and
3. CONVERSION.

## COMPLAINT

Plaintiff Robert Skousen ("Bob"), alleges on personal knowledge with respect to his own actions and on all other matters on information and belief, as follows:

COMPLAINT FOR VIOLATION OF 18 USC 1030

## PARTIES

1. Plaintiff Robert Skousen ("Bob") is a citizen of the State of Florida, and a resident of the City of Naples, Collier County.

2. James K. Skousen ("James"), Bob's brother, is a citizen of the State of California and a resident of the City of Redlands, San Bernardino County.

3. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that plaintiff's injuries were proximately caused thereby.

4. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the defendants was the agent and employee of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency.

## FACTUAL BACKGROUND

5. This matter involves the theft of $28,168.28 from an IRA owed by Bob by James, which violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, by accessing a "protected computer," as defined under 18 U.S.C. § 1030(e)(2), belonging to Charles Schwab, a financial institution, as defined 18 U.S.C. § 1030(e)(4)(F). In addition, the Charles Schwab computer that James accessed is a protected

2

computer because it was a computer that is used in or affecting interstate or foreign commerce. 18 U.S.C. § 1030(e)(2)(B).

6. Prior to 2011, Bob's mother, Nancy L. Skousen ("Nancy") established an IRA solely for the benefit of herself and Bob. Bob was the sole beneficiary of this IRA. The IRA was maintained at Charles Schwab, a financial institution, as defined 18 U.S.C. § 1030(e)(4)(F). In addition, since at least 2020 Bob has managed the investments of the IRA in Naples, Florida.

7. On January 3, 2025, Nancy died. Consequently, as a matter of law, as the sole beneficiary of the IRA, the IRA belonged solely to Bob as of January 3, 2025. Thus, on Nancy's death—on January 3, 2025--the Schwab IRA was completely vested in Bob, as sole owner, and had a value of $242,570.70.

8. On January 4, 2025, James accessed a protected computer maintained by Charles Schwab to view Bob's IRA account for the purpose of stealing $28,168.28 from Bob's account. James's access of Schwab's protected computer was without authorization in violation of the CFAA. On January 7, 2025, James illegally transferred $28,168.28 from Bob's Schwab IRA to a Citibank account that he controlled. As a matter of law, James had no legitimate claim, right or reason to transfer any funds out of Bob's IRA.

9. On January 8, 2025, Bob discovered the theft of the $28,168.28 and immediately notified Charles Schwab. Bob surmised that James was responsible for this theft. James denied that he was responsible and refused to return $28,168.28. James falsely claimed that the $28,168.28 was part of a trust that Nancy had established for the benefit of Bob, James and their sister, Julie Bjelland. Moreover, in an email dated August 29, 2025, James would continue to deny that he

3

was responsible for the theft of the $28,168.28. In the August 29, 2025 email, James claimed that "At no time was your IRA or any of your money touched. ANY of it." (capitalization in original). This was and is blatantly false.

10. When Bob notified Charles Schwab of the theft of the $28,168.28, Charles Schwab immediately froze Bob's IRA, and in so doing Bob was prevented trading his IRA account at Charles Schwab. This loss of access to his IRA account was an "impairment to integrity or availability of data, program, system, or information" as defined under 18 USCS § 1030(e)(8). As a result, Bob suffered the opportunity cost being unable to trade the IRA and as a result suffered economic losses, including the loss of $28,168.28.

11. In addition, Bob has suffered losses including reasonable costs, including the cost of responding to James's offense, which continues to the present and includes, conducting a damage assessment, restoring the data, program, system, or information to its condition prior to the offense, and lost revenue, as well as consequential damages incurred because of interruption of service. As of the date of filing this Complaint, Bob has continued to suffer losses, including lost revenue.

12. Under Nancy's Trust James was the successor trustee, and James has utilized his authority as trustee to falsely claim that the $28,168.28 that James stole from Bob's IRA was part of the Trust estate. Furthermore, James and his lawyer Robert Cannon ("Cannon") wrongfully and knowingly withheld distribution of Bob's share of Trust to attempt to extract a release of liability for James in connection with James's theft in violation of California Probate Code section 16004.5.

4

## JURISDICTION AND VENUE

13. **Jurisdiction-Federal Question.** This Court has original jurisdiction under 28 U.S.C. § 1331 in that this action arises under 18 U.S.C. §§ 1030(a)(4) and 1030(g) as alleged above. In particular, James's unauthorized access of a protected computer was "knowingly and with intent to defraud," and "by means of such conduct furthers the intended fraud and obtains anything of value": to wit, by such fraud James transferred $28,168.28 to an account that he controlled. 18 U.S.C. § 1030(a)(4) (West 2025). The loss of the $28,168.28 was in excess of the $5,000 minimum as required by 18 U.S.C. § 1030(a)(4).

14. **Jurisdiction-Diversity.** In addition, this Court has diversity jurisdiction under 28 U.S.C. § 1332 in that complete diversity of citizenship exists because Plaintiff Bob is a citizen of Florida and James is a citizen of California, and the amount in controversy exceeds $75,000. In particular, as set forth below Bob is entitled to treble damages in excess of $84,000, economic damages according to proof, interest, and attorneys' fees.

15. **Personal Jurisdiction.** James's actions in stealing $28,168.28 by violating the CFAA act, as alleged above, constitutes a tort under Florida Statute 48.193(1)(a)2. This tort harmed a Florida resident and in so doing, James has subjected himself to the personal jurisdiction of this Court, pursuant to case law, e.g., *Skyhop Technologies, Inc. v. Nara*, 58 F.4th 1211 (11th Cir. 2023) (reversing district court's dismissal of complaint for lack of personal jurisdiction and holding that commission of tort, including violation of the CFAA, which harms Florida residents subjects the defendant to personal jurisdiction under Florida's long arm statute).

16. **Venue.** Venue is proper in the Middle District because the Plaintiff is a resident and citizen of Collier County. The acts complained of took place in Collier County, Florida, and Plaintiff suffered damages and losses in the Middle District.

## FIRST CLAIM FOR RELIEF
### (Violation of the CFAA, 18 USC § 1030)

17. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 16, inclusive, as if fully set forth herein.

18. James "(A) knowingly cause[d] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[d] damage without authorization, to a protected computer; (B) intentionally access[ed] a protected computer without authorization, and as a result of such conduct, recklessly caus[ed] damage; or (C) intentionally access[ed] a protected computer without authorization, and as a result of such conduct, caus[ed] damage and loss" all in violation of 18 USC §§ 1030(a)(5) (A),(B), and (C).

19. James's actions, as alleged above, violated 18 USC §§ 1030(a)(2), (4), the Federal Computer Fraud and Abuse Act, by "knowingly and with intent to defraud, access[ed] a protected computer without authorization," and "by means of such conduct furthers the intended fraud and obtain[ed]" $28,168.28, which had value of "more than $5,000 in any 1-year period."

20. Plaintiff suffered both damage and loss as those terms are defined in 18 USC § 1030(e)(8) and 18 USC § 1030(e)(11), respectively. In particular, as a consequence of James's actions, Bob lost access to the

6

IRA account. This loss of access to his IRA account was an "impairment to integrity or availability of data, program, system, or information" as defined under 18 USCS § 1030(e)(8). As a result, Bob suffered the opportunity cost being unable to trade the IRA.

21. Moreover, as a result Bob suffered economic losses, including the loss of $28,168.28, as defined by 18 USC § 1030(e)(11), which included "reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."

## SECOND CLAIM FOR RELIEF
### (Violation of Fl. Statute 772.11)

22. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 16, inclusive, as if fully set forth herein.

23. Florida Statute 772.11 provides that any person "has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts." Fl. Stat. § 772.11 (West 2025).

24. Florida Statute 812.014 prohibits theft and makes theft an included predicate offense that 772.11 applies its threefold damages measure to. Florida Statute 812.014 defines theft as when: "(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to,

ROBERT SKOUSEN
6017 Pine Ridge Rd., Suite 349, FL 34119
TEL: 310-480-9882

either temporarily or permanently: (a)   Deprive the other person of a right to the property or a benefit from the property. (b)   Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property."

25. In stealing the $28,168.28, James violated section 821.014 and 772.11 by obtaining the property of Bob, with the intent to, either temporarily or permanently deprive Bob of his property and/or the benefit of his property. Moreover, James appropriated Bob's property to his own use without Bob's consent.

26. Florida Statute § 772.11 provides that "Before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section. If the person to whom a written demand is made complies with such demand within 30 days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft or exploitation by the person making the written demand."

27. On November 29, 2025, Bob served James with a demand for payment of the threefold damages, $84,504.84, that James owes pursuant to Florida Statute § 772.11. A true and correct of the November 29, 2025 letter is attached hereto as Exhibit A. Thirty days have expired since service of that demand letter, and James has failed to pay the $84,504.84 that he owes under Florida Statute § 772.11.

28. Accordingly, Bob is entitled to a judgment of $84,504.84, plus interest at the legal rate, and attorneys' fees pursuant to Florida Statute § 772.11.

29. In addition, in acting as alleged above, James was personally guilty of intentional misconduct or gross negligence.   In

particular, James had actual knowledge of the wrongfulness of his conduct and the high probability that injury or damage to Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage, including the loss of $28,168.28.

30. In addition, in acting as alleged above, James's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of persons exposed to such conduct. In addition, James was motivated solely by a desire for unreasonable and unlawful financial gain and the nature of James's conduct was unreasonably dangerous with the high likelihood of injury resulting from his conduct, which was actually known by James prior to and during the time that James stole the $28,168.28.

31. In addition, at the time of the theft of the $28,168.28 James had a specific intent to harm Plaintiff, and James's conduct did in fact harm Plaintiff. Accordingly, Plaintiff is entitled to punitive damages in the minimum amount of four times the compensatory damages of $84,504.84, or $338,019.36.

### THIRD CLAIM FOR RELIEF
### (Conversion)

32. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 16, inclusive, as if fully set forth herein.

33. On January 3, 2025, Plaintiff was the owner of $28,168.28 held in an IRA at Charles Schwab. Plaintiff and only Plaintiff had the had the right to possession of the $28,168.28.

9

34. On January 7, 2025, James exercised control or dominion over the $28,168.28 by illegally transferring the $28,168.28 to a bank account that he controlled. The defendant's actions interfered with the plaintiff's right to possess the property.

35. Plaintiff suffered damages due to the interference and transference of the $28,168.28.

36. James's actions in stealing the $28,168.28 caused damages to the Plaintiff because of the loss of $28,168.28 from Plaintiff's IRA. Accordingly, Bob is entitled to a judgment of $84,504.84, plus interest at the legal rate, and attorneys' fees pursuant to Florida Statute § 772.11.

37. In addition, in acting as alleged above, James was personally guilty of intentional misconduct or gross negligence. In particular, James had actual knowledge of the wrongfulness of his conduct and the high probability that injury or damage to Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage, including the loss of $28,168.28.

38. In addition, in acting as alleged above, James's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of persons exposed to such conduct. In addition, James was motivated solely by a desire for unreasonable and unlawful financial gain and the nature of James's conduct was unreasonably dangerous with the high likelihood of injury resulting from his conduct, which was actually known by James prior to and during the time that James stole the $28,168.28.

39. In addition, at the time of the theft of the $28,168.28 James had a specific intent to harm Plaintiff, and James's conduct did in fact

harm Plaintiff. Accordingly, Plaintiff is entitled to punitive damages in the minimum amount of four times the compensatory damages of $84,504.84, or $338,019.36.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For compensatory damages of $84,504.84;
2. For punitive damages of $338,019.36.
3. For attorney's fees and costs as allowed by law; and
4. For all other, further and different relief that this Court deems just and proper.

Dated: January 2, 2026

By: /s/ Robert Skousen
Robert Skousen,
Attorney Pro Se

ROBERT SKOUSEN
6017 Pine Ridge Rd., Suite 349, FL 34119
TEL: 310-480-9882