UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT SKOUSEN, AN
INDIVIDUAL;

        Plaintiff,

    v.

JAMES K. SKOUSEN, AN
INDIVIDUAL; AND  DOES 1-100,

        Defendants,

Case No. 2:26-cv-3-KCD-NPM

                /

## **ORDER**

Plaintiff Robert Skousen sues his brother, Defendant James Skousen, for taking money from his retirement account. (*See* Doc. 1.)[1] Robert lives in Florida, and because he felt the financial sting here, he has sued in the Middle District of Florida. But James lives in California. And all his actions took place there. James now moves to dismiss, arguing, among other things, that this Court lacks personal jurisdiction over him. (Doc. 9.)

The Court agrees. Exercising jurisdiction here would violate the Fourteenth Amendment because James lacks any meaningful contacts with this state. He did not purposefully avail himself of Florida's laws, and on the

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

record provided, the Court cannot say he should have known his actions would ripple into this forum. Accordingly, the motion to dismiss must be granted.

## I. Background

The retirement account ("IRA") at the center of this dispute was opened by Nancy Skousen, the mother of Robert and James. (Doc. 1 ¶ 6.) Nancy died in early 2025 and left the IRA to Robert. (Doc. 20 ¶ 16.) But shortly after her death, James transferred more than $28,000 from the account. (Doc. 1 ¶ 8.) James does not dispute that he took the money, but claims it was an accident. (Doc. 30 ¶¶ 14-16.)

James could apparently access the IRA because he held a power of attorney from Nancy. (Doc. 10 ¶ 9.) He is also the trustee for the Skousen Family Trust. (*Id.* at ¶ 3.)  According to James, the transferred funds were meant to come from a separate brokerage account at Charles Schwab, where the IRA is also held. (Doc. 30 ¶¶ 14-16.) James believed he was liquidating trust assets for funeral costs. (*Id.*) According to the evidence submitted, all of James's actions were done in California. Specifically, James sat down at his computer, logged onto the Charles Schwab platform, viewed the account data, and executed the electronic fund transfer that moved the money into a Citibank account under his control. The entire transaction happened right there at his desk. (Doc. 11-1, Doc. 30-1.)

Robert is not in California. He claims his home is in Florida, and because he lives here, the financial injury occurred here. (Doc. 1 ¶ 14.) James disagrees that Robert even lives in Florida, attesting that the address Robert used for this lawsuit is "a UPS Store providing commercial mailbox services." (Doc. 30 ¶ 9.) But as it turns out, we can leave that cross-country spat for another day. As a legal matter, this factual dispute changes nothing for the analysis that follows.

Robert's complaint presses three claims against his brother: (1) violation of the Federal Computer Fraud and Abuse Act, (2) civil theft, and (3) conversion. (Doc. 1.) James has responded with a multi-pronged motion to dismiss, arguing that this Court lacks personal jurisdiction, venue is improper, and the service of process was flawed. The service issue has been rectified (Doc. 17), leaving this Court to wrestle only with the thornier questions of jurisdiction and venue.

## II. Legal Standard

Federal courts have limited jurisdiction. We do not possess a roaming commission to address any grievance that wanders in the door. To hear a case, a federal court needs two distinct keys: subject matter jurisdiction over the controversy and personal jurisdiction over the parties. *See, e.g.*, *Thomas v. Vergara*, 812 F. Supp. 3d 1223, 1228 (M.D. Fla. 2025).

Subject matter jurisdiction asks whether the court has the structural authority to hear the dispute. For the most part, Congress funnels that power through two routes: federal question jurisdiction (cases about federal law) and diversity jurisdiction (cases between citizens of different states). *See* 28 U.S.C. §§ 1331, 1332. Personal jurisdiction asks whether the court has the power to determine the rights and obligations of the parties. Generally, a district court has jurisdiction over a defendant when he has "such contacts with the forum State that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice." *Talentscale, Inc. v. Aery Aviation, LLC*, 807 F. Supp. 3d 1354, 1358 (N.D. Fla. 2025).

When a defendant challenges personal jurisdiction, as here, the law sets up a game of procedural ping-pong. The plaintiff gets the opening serve: he "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Sarmiento Lopez v. CMI Leisure Mgmt., Inc.*, 591 F. Supp. 3d 1232, 1236 (S.D. Fla. 2022). "[T]he burden [then] shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Id.* If such evidence is offered, the burden swings right back to the plaintiff "to produce evidence supporting jurisdiction." *Id.* And if the record ends in a deadlock, the tie goes to the runner: "we must construe all reasonable

4

inferences in favor of the plaintiff." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

### III. Discussion

Deciding whether this Court can exercise personal jurisdiction over an out-of-state defendant requires a two-step inquiry. First, we look to state law: does Florida's long-arm statute pull the defendant into our reach? Second, we check the Constitution: does exercising jurisdiction comport with the Due Process Clause of the Fourteenth Amendment? The answer to both must be yes. *Id.*

Florida's long-arm statute allows for personal jurisdiction over defendants who commit "a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). Robert hooks his entire argument to this clause, arguing that his brother's electronic siphoning fits this category because it "caused an injury in Florida." (*See* Doc. 19 at 7-10.) We need not wade into the thicket of recent case law clarifying what counts as a "tortious act" under the statute. *See Thorpe v. Mem'l Sloan-Kettering Cancer Ctr.*, 412 So. 3d 861, 872 (Fla. Dist. Ct. App. 2025) ("[M]ere injury in Florida resulting from a defendant's tortious act committed wholly outside of the state is insufficient to confer personal jurisdiction."). Even accepting that § 48.193(1)(a)(2) is satisfied here, Robert's argument runs into a constitutional wall.

5

The Due Process Clause protects defendants from being hauled into a distant court unless they have established "minimum contacts" with that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). And the contacts must show purposeful availment—meaning the defendant deliberately chose to direct his activities at the forum state. *Id.* at 474-76; *see also Interstellar Prods., Inc. v. Bush*, 576 F. Supp. 3d 1106, 1110 (M.D. Fla. 2020).

Figuring out exactly where to draw the line for personal jurisdiction can be tricky business. But the Supreme Court has made one thing crystal clear: the tie that binds a defendant to a forum must be of his own making, not the plaintiff's itinerary. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). In *Walden*, the Court held that a defendant's knowledge that a plaintiff will feel an injury in a particular state is not itself enough to create minimum contacts. *Id.* at 290. The relationship must arise out of contacts that the defendant *himself* creates, and the plaintiff cannot be the only bridge connecting the defendant to the forum state. *Id.* at 284-85; *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010) ("The focus must always be on the nonresident defendant's conduct, that is, whether the defendant deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum.").

When you apply those principles to the record here, Robert's jurisdictional argument falls apart. James has no independent ties to Florida. He did not step foot in this state, he does not own property here, and he has never conducted business here. The alleged tortious activity underlying this suit occurred entirely online, thousands of miles away. James sat at a desk in California, opened a laptop in California, and executed a digital transfer that moved funds into a California bank account. And the IRA account itself was created outside of Florida and possessed no inherent connection to this state.

The only connection to Florida is the fact that Robert lives here and claims the IRA was thus legally anchored to his domicile. In other words, Robert is trying to make himself the sole bridge connecting James to this forum—the exact structural arrangement *Walden* prohibits. *See Anderson v. Talentsy, Inc.*, 599 F. Supp. 3d 1207, 1216 (M.D. Fla. 2022) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

To patch this constitutional hole, Robert argues that James's conduct wasn't random. He insists James *knew* he was targeting a Florida resident and an account in Florida. (Doc. 19 at 10.) If true, those facts could certainly establish personal jurisdiction. *See, e.g.*, *Karnas v. Cuban*, No. 22-CV-22538, 2025 WL 3759241, at *9 (S.D. Fla. Dec. 30, 2025) ("The effects test [is] met

when [a] tort is expressly aimed at a specific individual in the forum whose effects were suffered in the forum."). But Robert offers no competent evidence to back up this claim.

Robert points only to his own affidavit, which summarily declares that James "was aware [he] had moved to Florida." (Doc. 20 ¶ 7.) Beyond this bare-bones assertion, he offers zero actual facts to back up the deduction. To state the obvious, Robert cannot testify from personal knowledge about what James knew (or didn't know) of his location. On the flip side of the ledger, James has submitted his own sworn statement explicitly denying that he had any clue about Robert's location when the transfer occurred. Because Robert meets a direct factual denial with an assumption he is incompetent to make, he falls short of carrying his burden to prove purposeful availment.

James's relevant conduct occurred entirely in California, and the fact that it affected Robert in Florida does not suffice to authorize jurisdiction. *See Anderson*, 599 F. Supp. 3d at 1217. Robert's residency is the single, solitary thread tying James to this forum. But the tie that binds a defendant to a forum must be of his own making. Because the record is completely bare of any purposeful availment by James, Robert has failed to establish personal jurisdiction, and this action must be dismissed.

Accordingly, James's Motion to Dismiss (Doc. 9) is **GRANTED** as to personal jurisdiction. Because this Court lacks the power to haul James into a

Florida courtroom, it need not reach any further issues, including the parties' secondary dispute over venue. The claims against James are thus **DISMISSED WITHOUT PREJUDICE**. The only other defendants listed are "DOES 1-100," which is impermissible in the Eleventh Circuit. *Daniel v. Piccadilly Holdings Ltd. Liab. Co.*, No. 1:20-CV-02189-LMM, 2022 WL 22831581, at *1 (N.D. Ga. Apr. 27, 2022). The Clerk is directed to terminate any other pending motions and close the case.

ORDERED in Fort Myers, Florida on June 26, 2026.

Kyle C. Dudek
United States District Judge

9